**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

Filed/Docketed
Jun 30, 2025

IN RE:

**SCOTT MICHAEL LEONARD**

**Debtor.**

**Case No. 25-10219-T
Chapter 13**

## MEMORANDUM OPINION

This matter comes before the Court pursuant to the Motion to Convert Case to a Case under Chapter 7 (the "Motion")[1] filed by Lakeside Bank of Salina, Oklahoma ("Lakeside Bank"); Bank of Commerce, Chouteau, Oklahoma ("Bank of Commerce"); and American National Bank of Oklahoma, Collinsville, Oklahoma ("American Bank") (collectively, the "Banks"); and an Objection[2] filed by Scott Michael Leonard ("Debtor"). In compliance with an agreed Scheduling Order,[3] the parties submitted stipulated facts[4] and further briefing[5] on the issues presented in this contested matter. The matter is now ripe for decision on the briefs. The following findings of fact and conclusions of law are made pursuant to Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52.

### Jurisdiction

The Court has jurisdiction over this bankruptcy case pursuant to 28 U.S.C. § 1334(b).[6] Reference to the Court of the bankruptcy case is proper pursuant to 28 U.S.C. § 157(a). Matters

---

[1] ECF No. 14.

[2] ECF No. 22.

[3] ECF No. 29.

[4] ECF No. 35.

[5] ECF Nos. 38, 39, 43.

[6] Unless otherwise noted, all statutory references are to sections of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq*.

concerning the administration of the estate are core proceedings as defined by 28 U.S.C. § 157(b)(2)(A).

**Findings of Fact**

The following facts were stipulated by the parties in the Stipulation of Facts[7] filed pursuant to the agreed Scheduling Order:[8]

1. Debtor filed this Chapter 13 case on February 24, 2025 (the "Petition Date").

2. Each of the three Banks made one or more prepetition non-consumer loans to Debtor, all of which went into default resulting in multiple lawsuits against Debtor and his non-debtor spouse Amanda Sarah Leonard ("Amanda") prepetition as detailed below.

3. Lakeside Bank further states that for the purpose of securing payment of Lakeside Note 1, Debtor and Amanda, made, executed, and delivered to Lakeside Bank, a real estate mortgage (the "Lakeside Mortgage") covering the following described real estate in Mayes County, Oklahoma, to-wit:

   **Tract 1:**
   U. S. Government Lot Numbered Four (4) and the Southeast Quarter of the Southwest Quarter (SE¼ SW¼) of Section Seven (7), Township Twenty-one (21) North, Range Twenty (20) East of the Indian Base and Meridian, Mayes County, State of Oklahoma.

   **Tract 2:**
   Lot Numbered One (1) and the Northeast Quarter of the Northwest Quarter (NE¼ NW¼) of Section Eighteen (18), Township Twenty-one (21) North, Range Twenty (20) East of the Indian Base and Meridian, Mayes County, State of Oklahoma.

   **Tract 3:**
   The Southeast Quarter (SE¼) of Section Thirteen (13), Township Twenty-one (21) North, Range Nineteen (19) East of the Indian Base and Meridian, Mayes County, State of Oklahoma, LESS AND EXCEPT that part conveyed to the Department of Transportation, State of Oklahoma

   **Tract 4:**
   The Southeast Quarter of the Southeast Quarter (SE¼ SE¼) LESS AND EXCEPT that part conveyed to the City of Tulsa; the Northeast Quarter of the Southwest Quarter (NE¼ SW¼); the Northwest Quarter of the Southeast Quarter (NW¼

---

[7] ECF No. 35 (the stipulated facts have been renumbered and edited for clarity).
[8] ECF No. 29.

2

SE¼); and a tract of land situated in the Northeast Quarter of the Southeast Quarter (NE¼ SE¼) being more particularly described as follow, to-wit:

Beginning at the Northwest corner of the NE¼ of the SE¼; THENCE North 88° 22' 48" East along the North line of the NE¼ of the SE¼ for a distance of 38.18 Feet; THENCE South 01° 33' 11" East for a distance of 1320.72 Feet to a point on the South line of the NE¼ of the SE¼; THENCE South 88° 20' 37" West for a distance of 38.34 Feet to the Southwest corner of the NE¼ of the SE¼; THENCE North 01° 32' 46" West for a distance of 1320.74 Feet to the Point of Beginning, ALL in Section Thirty-two (32), Township Twenty-two (22) North, Range Twenty (20) East of the Indian Base and Meridian, Mayes County, State of Oklahoma.

(all of the above real estate is the "Lakeside Mortgaged Property").

4. The Lakeside Mortgage was duly recorded in Book 1395 at Page 959 in the office of the County Clerk of Mayes County, Oklahoma, on November 25, 2019, and the required mortgage tax was paid.

5. On or about October 18, 2022, after the Lakeside Mortgage was filed, Debtor transferred by quit claim deed all of his interest in Tracts 2 and 3 to Amanda for no consideration (the "Transferred Property").

6. On or about May 10, 2024, Lakeside Bank sued Debtor and Amanda to foreclose the Lakeside Mortgage in Mayes County District Court in Case No. CJ-2024-00108 (the "Lakeside Foreclosure Suit").

7. On November 4, 2024, a judgment was entered against Debtor and Amanda (the "Lakeside Foreclosure Judgment"). No appeal was filed, and the Lakeside Foreclosure Judgment is a final order. The amount of the Lakeside Foreclosure Judgment is $525,742.60 principle, interest accrued and accruing to the Petition Date, per diem interest accruing after the Petition Date, and for an attorney fee in the sum of $2,500.00 together with fees and charges. According to Proof of Claim number 10 filed in this case, the total amount owed by Debtor under the Lakeside Foreclosure Judgment as of the Petition Date was $656,645.36.

8. On January 9, 2025, a sheriff's sale was conducted to enforce the Lakeside Foreclosure Judgment whereupon Tracts 1, 2, & 3 of the Lakeside Mortgaged Property were sold for an aggregate price of $1,191,000 and Tract 4 of the Lakeside Mortgaged Property was sold for $810,000, for an aggregate sale price of $2,001,000 (the "Sheriff's Sale").

9. Debtor filed the petition in this case the day before the hearing to confirm the Sheriff's Sale.

10. The following debts are noncontingent, liquidated secured debts owed by Debtor:

|  |  |  |
|---|---|---|
| a. | BancFirst: | $24,599.07 |
| b. | Chase Auto Finance: | $63,481 |
| c. | Ford Motor Credit: | $62,676.99 |
| d. | Lincoln Automotive: | $43,733.44 |
| e. | Bank of Commerce | $118,241.10 |
| f. | Mayes County Treasurer | $5,806 |
| g. | Lakeside Bank Equipment: | $28,923.86 |
| h. | American Bank: | $739,234.52 |

Total uncontested noncontingent secured debt:          $1,086,695.98

11. Debtor does not dispute the validity of the $656,645.36 amount owed on the Lakeside Foreclosure Judgment, $98,306 owed to Bank of Grand Lake, and $35,084.55 owed to FSA Farm Service Agency (the "Additional Debts").[9]

12. Debtor disputes the Additional Debts should be considered noncontingent for purposes of § 109(e).[10]

In addition to the stipulations above, the Court finds that Debtor scheduled $15,229.27 of debt as unsecured on Schedule E/F (the "Scheduled Unsecured Debt").[11]

### Conclusions of Law

The issue before the Court is whether Debtor may be a debtor under Chapter 13 of the Bankruptcy Code. The Banks allege that, as of the Petition Date, Debtor owed noncontingent, liquidated secured debts that exceed the statutory threshold for eligibility to participate in a case under Chapter 13, and ask the Court to convert this case to one under Chapter 7. The parties

---

[9] The sum of the Additional Debts is $790,035.91.

[10] This factual finding is based on ¶17 of the Stipulated of Facts, at ECF No. 35. The meaning of the stipulation is unclear. The Court looks to Debtor's Brief, at ECF No. 38, at 2, where Debtor states the position above.

[11] ECF No. 1, at 46.

4

acknowledge that Debtor owed substantial noncontingent secured debt, but they disagree about the nature of the Additional Debts. If, as the Banks allege, the Additional Debts are determined to be noncontingent, Debtor will not be eligible for relief under Chapter 13.  Debtor does not dispute the validity or amount of the Additional Debts, but insists they are contingent in nature.  If the Court determines otherwise, Debtor requests an opportunity to dismiss this case prior to conversion to another chapter.[12]

Section 109(e) of the Bankruptcy Code reads:

(e) Only an individual with regular income that owes, on the date of the filing of the petition, **noncontingent, liquidated, unsecured debts of less than $465,275** . . . and **noncontingent, liquidated, secured debts of less than $1,395,875 . . .** may be a debtor under chapter 13 of this title.[13]

Breaking that down, if Debtor had *noncontingent, liquidated unsecured debts* in excess of $465,275 OR *noncontingent, liquidated secured debts* in excess of $1,395,875 OR *total noncontingent, liquidated debts* of $1,861,150[14] on the Petition Date, he is not eligible to be a debtor under Chapter 13.[15]  Although the amount of debt is a question of fact, whether a debt is "contingent" or "liquidated" is a question of law.[16] Whether a debt is considered "liquidated" turns

---

[12] ECF No. 22, at 1 ¶2.

[13] § 109(e) (emphasis added). This is the version of the statute that was in effect on the Petition Date. Counsel for Debtor notes that the debt thresholds in the statute were updated as of April 1, 2025. *See* § 104(a). Such statutory adjustments do not apply to cases commenced prior to the date of adjustment. *See* § 104(c). *See also In re Slack*, 187 F.3d 1070, 1073 (9th Cir. 1999), *as amended* (Sept. 9, 1999) ("The language of the statute clearly states that the amount of the debt is determined as of '**the date of the filing of the petition**.'") (quoting § 109(e)).

[14] $1,861,150 is the sum of the unsecured and secured statutory limits for noncontingent, liquidated debt in § 109(e). By combining the limits in this way, the Court can foreclose any argument that a reclassification of certain debts from secured to unsecured, or vice versa, would affect the outcome in this case.

[15] § 109(e). *See, e.g., In re White*, 216 B.R. 232, 236 (Bankr. S.D. Ohio 1997) (using the sum of the statutory limits for noncontingent, liquidated secured and unsecured debt as a reference to determine eligibility under § 109(e)).

[16] *In re Green*, 574 B.R. 570, 576 (Bankr. E.D.N.C. 2017).

on whether the amount owed is "readily determinable."[17]   A debt is noncontingent if all events that cause liability to arise have occurred pre-petition. Conversely, a debt is considered contingent where some post-petition event must transpire before liability arises.[18] In making this determination, "the court should canvass and review the debtor's schedules and proofs of claim, as well as other evidence offered by a debtor or the creditor to decide only whether the good faith, facial amount of the debtor's liquidated and non-contingent debts exceed statutory limits."[19]

Title 12, section 686 of the Oklahoma Statutes ("§ 686"),[20] controls the operation of

---

[17] *In re Adams*, 373 B.R. 116, 119-20 (10th Cir. BAP 2007).

[18] *Id*. (citing *In re Reader*, 274 B.R. 893, 896 (Bankr. D. Colo. 2002)).

[19] *Id*. (citing *In re Barcal*, 213 B.R. 1008, 1015 (8th Cir. BAP 1997)).

[20] Okla. Stat. tit. 12, § 686 states:

In actions to enforce a mortgage, deed of trust, or other lien or charge, ***a personal judgment or judgment or judgments*** shall be rendered for the amount or amounts due as well to the plaintiff as other parties to the action having liens upon the mortgaged premises by mortgage or otherwise, with interest thereon, and for sale of the property charged and the application of the proceeds; or such application may be reserved for the future order of the court, and the court shall tax the costs, attorney's fees and expenses which may accrue in the action, and apportion the same among the parties according to their respective interests, to be collected on the order of sale or sales issued thereon; when the same mortgage embraces separate tracts of land situated in two or more counties, the sheriff of each county shall make sale of the lands situated in the county of which he or she is sheriff. No real estate shall be sold for the payment of any money or the performance of any contract or agreement in writing, in security for which it may have been pledged or assigned, except in pursuance of a judgment of a court of competent jurisdiction ordering such sale. . . . Notwithstanding the above provisions, no judgment shall be enforced for any residue of the debt remaining unsatisfied as prescribed by this act after the mortgaged property shall have been sold, except as herein provided. Simultaneously with the making of a motion for an order confirming the sale or in any event within ninety (90) days after the date of the sale, the party to whom such residue shall be owing may make a motion in the action for leave to enter a ***post-judgment deficiency order*** upon notice to the party against whom such judgment is sought or the attorney who shall have appeared for such party in such action. Such notice shall be served personally or in such other manner as the court may direct. Upon such motion the court, whether or not the respondent appears, shall determine, upon affidavit or otherwise as it shall direct, the fair and reasonable market value of the mortgaged premises as of the date of sale or such nearest earlier

foreclosure proceedings under Oklahoma law. In *Hub Partners XXVI, Ltd. v. Barnett*,[21] the

Oklahoma Supreme Court described the operation of § 686 as follows:

> A mortgage gives the creditor a security interest in the debtor's real property.
> Foreclosure is the legal proceeding to terminate a debtor's interest in that property,
> instituted by the creditor. Under Oklahoma law, foreclosure of a mortgage is a
> multi-step process [citing Oklahoma Statutes tit. 12, § 686 (2011)]. The foreclosure
> judgment determines only that there is a valid mortgage lien, which the creditor is
> entitled to enforce through a sale.  However, the mortgage lien itself is extinguished
> only by a sale [citing Oklahoma Statutes tit. 42, § 22 (2011) ("The sale of any
> property on which there is a lien, in satisfaction of the claim secured thereby . . .
> extinguishes the lien thereon.")]. Until such sale, the mortgage as a property right
> created by contract remains unaffected. Due to the nature of a mortgage lien, this
> Court previously held in [*Anderson v. Barr*, 1936 OK 471, ¶ 25, 178 Okla. 508, 62
> P.2d 1242, 1247], and *Methvin v. Am. Sav. & Loan Ass'n of Anadarko*, 1944 OK
> 177, ¶ 44, 194 Okla. 288, 151 P.2d 370, 376, that a mortgage lien does not merge
> into a foreclosure judgment, nor is it extinguished by a foreclosure judgment. We
> follow *Anderson* and *Methvin* and hold the mortgage lien did not merge into Hub's
> foreclosure judgment.[22]

In the absence of foreclosure proceedings, a debt secured by a note and mortgage on a debtor's

property is included in the calculation of secured debt under § 109(e) as noncontingent and

liquidated debt.[23]  A personal judgment issued pursuant to § 686 has the effect of establishing the

---

date as there shall have been any market value thereof and shall enter a ***post-
judgment deficiency order***. Such ***post-judgment deficiency order*** shall be for an
amount equal to the sum of the amount owing by the party liable as determined by
the order with interest, plus costs and disbursements of the action plus the amount
owing on all prior liens and encumbrances with interest, less the market value as
determined by the court or the sale price of the property whichever shall be the
higher. If no motion for a ***post-judgment deficiency order*** shall be made as herein
prescribed the proceeds of the sale regardless of amount shall be deemed to be in
full satisfaction of the mortgage debt and no right to recover any deficiency in any
action or proceeding shall exist. (emphasis added).

[21] *Hub Partners XXVI, Ltd. v. Barnett*, 2019 OK 69, 453 P.3d 489.

[22] *Id.* ¶ 14, 453 P.3d at 493–94 (citations and footnote omitted) (noting that both *Anderson*
and *Methvin* were overruled by *North v. Haning*, 1950 OK 280, 204 Okla. 321, 229 P.2d 574 on
other grounds).

[23] *Id. See also In re Fostvedt*, 823 F.2d 305 (9th Cir. 1987) (joint and several liability on
promissory notes was noncontingent and liquidated for purposes of § 109(e) because debtor was
liable for full amount of notes, regardless of the possibility that his co-obligors would eventually
pay some or all of the debt or creditor would not demand payment).

validity of a mortgage on property, but it does nothing to alter the legal effect of the mortgage itself.[24] Under Oklahoma law, "a judicial sale on foreclosure is neither conclusive nor binding in the sense of transferring legal title to the purchaser until it is effectively confirmed."[25] Only a confirmed sale will extinguish a creditor's lien.[26]  As a result, there is no change in the liability of a mortgage debtor until the property is sold *and the sale confirmed*.[27]

Debtor does not contest the debt secured by the Lakeside Mortgaged Property would be included in the calculation of debt under § 109(e) in the absence of the foreclosure action.  The debt was evidenced by a promissory note and the Lakeside Mortgage, which established a clear noncontingent liability of Debtor to Lakeside Bank in a specific liquidated amount.[28] Prior to the filing of this case, Lakeside Bank was awarded an *in rem and in personam* judgment against Debtor, which totaled $656,645.36 on the Petition Date.[29] At the Sheriff's Sale, the Lakeside Mortgaged Property sold for $2,001,000. Although the Sheriff's Sale had taken place, it was not confirmed as of the Petition Date.

Debtor argues that after the state court issued the Lakeside Bank Foreclosure Judgment, his liability became contingent on the issuance of a post-judgment deficiency order.[30] Whether

---

[24] *See Hub Partners*, ¶ 14, 453 P.3d at 493 (citing *Fed. Deposit Ins. Corp. v. Tidwell*, 1991 OK 119, ¶5, 820 P.2d 1338, 1341).

[25] *Sooner Fed. Savs. & Loan Assoc. v. Okla. Central Credit Union*, 790 P.2d 526, 529 (1989). *See also In re Faulkner*, 240 B.R. 67, 68 (Bankr. W.D. Okla. 1999) ("For over half a century, Oklahoma decisional law has held that a foreclosure sale is not complete, in fact not a sale, until it is confirmed by a Court.").

[26] *See* Okla. Stat. tit. 42, § 22; *Bank of Panhandle v. Hill*, 1998 Okla. Civ. App. 140, 965 P.2d 413, 965 P.2d 413, 417.

[27] *Hub Partners*, ¶14, 453 P.3d at 493-94 (citing Okla. Stat. tit. 42, § 22; *Anderson v. Barr*, 1936 OK 471, ¶25, 62 P.2d 1242, 1247 (overruled on other grounds by *North v. Haning*, 1950 OK 280, 229 P.2d 574)).

[28] *See* Lakeside Foreclosure Judgment, ECF No. 48-1, at 8-23.

[29] *See supra,* Findings of Fact ¶ 7; Lakeside Foreclosure Judgment, ECF No. 48-1, at 32.

[30] Debtor cites to the case of *In re Stephan*, 588 Fed. Appx. 143 (3d Cir. 2014), for the proposition that "[a] mortgage interest in a property that has not yet been foreclosed is a classic

such a deficiency order will ever issue depends on the amount of proceeds generated from the Sheriff's Sale and whether the affected creditors follow the proper procedures under § 686 to receive such an order. Debtor appears to confuse a *personal foreclosure judgment*—the order issued under §686 determining the amount due in a foreclosure action and ordering the sale of property to satisfy the mortgage lien[31]—with a *post-judgment deficiency general execution order*—the process issued to enforce the unpaid balance of a personal foreclosure judgment after mortgaged property has been sold and the proceeds applied to the debt.[32] Although the filing of Debtor's bankruptcy case stayed the execution of the Lakeside Foreclosure Judgment,[33] it did not affect his liability under that judgment. As a signatory on the note and Lakeside Mortgage, Debtor has primary liability on the Lakeside Mortgage Judgment.[34] Because no sale of collateral has been

---

contingent right to payment." *Id.* at 143. There, a debtor argued that a fully unsecured second mortgage was unenforceable unless the creditor had filed a foreclosure action prior to the petition date. The court's reference to a contingent right to payment was made in an effort to explain why a particular claim was enforceable under § 502(b)(1). The court found that the debtor's bankruptcy filing did nothing to affect the creditor's right to payment from the proceeds of the property and did not affect the claim's status as an "enforceable obligation." It is unclear from the context what the court meant by its reference to an unforeclosed mortgage interest as a contingent right to payment. What is clear is that neither *In re Stephan*, nor its analysis, has any bearing on or application to the facts of this case.

[31] *See Hub Partners,* ¶ 9, 453 P.3d at 492 ("The judgment in a foreclosure proceeding is the order determining the amount due and ordering the sale to satisfy the mortgage lien. It is a final, appealable judgment.") (citing *FDIC v. Tidwell*, 1991 OK 119, ¶ 5, 820 P.2d 1338, 1341). The Lakeside Foreclosure Judgment is an example of a personal foreclosure judgment.

[32] Okla. Stat. tit. 12, § 731 ("Executions shall be deemed process of the court, and shall be issued by the clerk, and directed to the sheriff of the county."). *See also Bank of Oklahoma, N.A. v. Welco, Inc*., 1995 Okla. Civ. App. 43, ¶ 18, 898 P.2d 172, 177 ("[a] deficiency judgment under § 686 is a post-judgment prerequisite to the issuance of a general execution for the enforcement of the unpaid balance due upon the original judgment.") (citing *Baker v. Martin*, 538 P.2d 1048 (Okla.1975)).

[33] *See* § 362(a)(2).

[34] *See, e.g., In re Green*, 574 B.R. 570, 579-80 (Bankr. E.D.N.C. 2017). *See also Mazzeo v. United States (In re Mazzeo)*, 131 F.3d 295, 303 (2d Cir. 1997) ("Nor, by a future 'event,' do we refer to a judicial determination as to liability and relief, for a claim may be noncontingent even though it has not been reduced to judgment. *See* 11 U.S.C. § 101(5)(A). Although the creditor's ability to collect the sum due him may depend upon adjudication, that does not make the debt itself

confirmed, no deficiency judgment issued, and no post-deficiency execution order issued, Debtor remains liable for the full amount of the Lakeside Foreclosure Judgment, and that debt is both liquidated and noncontingent for purposes of § 109(e).[35],[36]

Debtor also argues that he no longer has an ownership interest in the Transferred Property, having transferred his interest to Amanda by quit-claim deed in 2022. Divorcing himself from ownership of a portion of Lakeside Bank's collateral does nothing to change his relationship with or liability to Lakeside Bank.[37]  Whether a debtor has ownership rights in collateral may affect whether a debt is considered secured or unsecured, but it will not affect the contingent nature of the liability.[38]  Because the parties did not address the issue of whether the Additional Debts should be classified as secured or unsecured, the Court will not opine on the issue here, except to note that

---

contingent. 'In broad terms, the concept of contingency involves the nature or origin of liability. More precisely, it relates to the time or circumstances under which the liability arises. In this connection liability does not mean the same as judgment or remedy, but only a condition of being obligated to answer for a claim.'") (quoting *In re Knight,* 55 F.3d 231, 236 (7th Cir. 1995)).

[35] The facts of this case are almost identical to those of *In re White*, 216 B.R. 232 (Bankr. S.D. Ohio 1997). In that case, the creditor had commenced a foreclosure action in state court on business property owned by the debtors. A foreclosure judgment was entered against the debtors and in favor of the creditors, and the property was subsequently sold at sheriff's sale. The debtors filed for relief under Chapter 13 before the order confirming the sale was entered by the state court. The court in *In re White* applied Ohio law which, similar to Oklahoma law, requires confirmation of a sheriff's sale before a mortgagor's right to redeem property is finally foreclosed. The debtors in that case also argued that the debt owed was contingent because it was in a "state of transition" due to the pending confirmation of sheriff's sale. The court rejected that argument and found the debtors retained redemption rights up to the time of confirmation, and the associated debts were both liquidated and noncontingent, causing them to be ineligible for relief under Chapter 13.

[36] The parties have not provided the Court with any information regarding the debts to Bank of Grand Lake or FSA Farm Service Agency beyond the statement that Debtor challenges their noncontingent status. Bank of Grand Lake filed a claim indicating its debt is secured by Tract 1. *See* Proof of Claim 6-1. USDA, Farm Service Agency filed a claim for $35,084.55, indicating its debt is secured by Tract 1. *See* Proof of Claim 4-1. To the extent those debts share qualities with the Lakeside Mortgage Judgment discussed herein, the same principles would apply.

[37] *See, e.g., In re Green*, 574 B.R. at 579.

[38] *See id.* Some courts find that a debt secured by property that no longer belongs to the debtor will be treated as unsecured for purposes of § 109(e).

in this case, the sum of Debtor's uncontested noncontingent secured debt, the Additional Debts, and the Scheduled Unsecured Debts is sufficient to cause Debtor to be ineligible under § 109(e) regardless how his debts are classified.

## Conclusion

Debtor acknowledges that he owed noncontingent, liquidated secured debt of $1,086,695.98 on the Petition Date. He also scheduled other unsecured debt of $15,229.27. The Additional Debts are noncontingent, liquidated debt in the amount of $790,035.91. Combined, Debtor owed at least $1,891,961.16 in noncontingent, liquidated debt as of the Petition Date, which exceeds the applicable threshold for such debt under §109(e) of $1,861,150.  Therefore, the Court must find that Debtor is not eligible to proceed under Chapter 13 of the Bankruptcy Code.  Based on this conclusion, the Court will allow the parties to address the issue of whether dismissal or conversion of this case is in the best interests of the creditors and the estate.[39]  The Court will set the Motion for status hearing by separate order.

Dated this 30th of June, 2025.

BY THE COURT:

PAUL R. THOMAS, CHIEF JUDGE
UNITED STATES BANKRUPTCY

---

[39] *In re McCune*, 635 B.R. 409 (Bankr. D.N.M. 2021) (discussing debtor's absolute right to voluntarily dismiss a Chapter 13 case prior to conversion to another chapter); *In re Porzio*, 622 B.R. 20, 24 (Bankr. D. Conn. 2020) ("[I]f the court finds the debtor to be ineligible for chapter 13, the court has discretion either to dismiss or to convert the case, depending on the best interests of the creditors and the estate.") (citing 8 Collier on Bankruptcy ¶ 1307.4 (16th ed. 2020)).